UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN WOODHOUSE,

                                        Plaintiff,

                    -v-

META PLATFORMS INC., *et al.*,

                                        Defendants.

23 Civ. 7000 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion for a nationwide filing injunction against an unusually

vexatious litigant.

Benjamin Woodhouse is a lawyer licensed to practice in the State of California who owns

and controls Havensight Capital LLC ("Havensight"), ostensibly a private equity company.[1]

Defendants Nike, Inc. ("Nike"), Meta Platforms, Inc. ("Meta"), Gibson, Dunn & Crutcher LLP

("Gibson Dunn"), and Alphabet Inc. ("Alphabet")[2] seek an order declaring Woodhouse a

vexatious litigant and enjoining him and any company he owns or controls from filing any civil

action against any of them in any federal district court. Defendants note Woodhouse's history of

filing frivolous lawsuits against them making fantastical claims, that he has done so in courts in

the Central District of California, the District of Columbia, and now this District, and that after

---

[1] *See Woodhouse v. United States Gov't (Government I)*, No. 21 Civ. 06372 (SB), 2021 WL
6333468, at *1 (C.D. Cal. Nov. 24, 2021), *aff'd*, No. 22-55045, 2023 WL 3600032 (9th Cir. May
23, 2023); *see also Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257,
261 (2d Cir. 2005) ("[U]nder Rule 201(b) of the Federal Rules of Evidence, a court may take
judicial notice of facts that are 'capable of accurate and ready determination by resort to sources
whose accuracy cannot reasonably be questioned.'").

[2] There are other defendants in this action besides the four moving defendants. For the purposes
of this decision, the Court here refers to the four moving defendants as "defendants."

Woodhouse has been sanctioned and/or held in contempt, his *modus operandi* has been to bring similar such claims in new cases and venues. They note Woodhouse's use of Havensight as a vehicle for such specious litigation. They argue that only by a nationwide filing injunction can Woodhouse's campaign of harassing, provocative, and baseless litigation be brought to heel.

For the following reasons, the Court agrees, and grants the motion.

## I.     Overview and Procedural History

Defendants' motion for a nationwide filing injunction is based on Woodhouse's long litigation history in federal court. The Court takes judicial notice of the following actions he has brought. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (citation and internal quotation marks omitted)).

### A.   Woodhouse's Relevant Litigation History

#### 1.   Nike Actions

##### a.   Nike I

On September 12, 2014, Woodhouse filed suit against Nike on behalf of Havensight. It claimed (1) intentional interference with contractual relations; (2) intentional interference with prospective economic relations; (3) negligence; (4) commercial misappropriation; (5) invasion of privacy; and (6) unfair competition and trade practices. *Havensight Cap. LLC v. Nike, Inc. (Nike I)*, No. 14 Civ. 7153 (MLR), 2014 WL 12613382, at *1–3 (C.D. Cal. Nov. 19, 2014). It alleged that Nike had used Havensight's St. Thomas F.C. brand name and design to sell Nike products. *Id.* at *3. It sought $98.6 million in compensatory and $150 million in punitive damages. *See Nike I*, 14 Civ. 7153, Dkt. 1 at 7.

Havensight, through Woodhouse, moved for summary judgment before Nike responded to the complaint. *Id.*, Dkt. 14. After Nike moved to dismiss, Havensight made five requests for default judgment against Nike. *Id.*, Dkt. 24. Havensight also sought a writ of execution, falsely claiming that a judgment of $248,610,000 had been entered against Nike. *Id.*, Dkt. 18. The district court denied Havensight's requests as spurious and dismissed the case with prejudice. *See id.*, Dkt. 32; *Nike I*, 2014 WL 12613382, at *4. In dismissing, United States District Judge Manuel L. Real explained that Havensight "makes vague legal conclusions, and merely recites the elements of the causes of action instead of pleading facts, which give rise to a plausible claim." *Nike I*, 2014 WL 12613382, at *3.

Undeterred, Havensight filed 10 post-dismissal motions, applications, and requests for default judgment. These were all stricken or denied. *Nike I*, 14 Civ. 7153, Dkts. 54, 56, 58, 74, 79, 83, 85, 101, 107, 108. Havensight also requested judicial reassignment multiple times, each denied. *See, e.g., id.*, Dkts. 71, 104.

On March 31, 2015, the district court sanctioned Woodhouse in the amount of $1,000 and referred him to the California State Bar. *Id.*, Dkt. 110 at 6. It also declared Havensight a vexatious litigant. *Id.*, Dkt. 118 at 8. Because "nothing short of a pre-filing condition will stop Plaintiff's frivolous filings," the court imposed pre-filing conditions that Havensight had to follow "prior to filing any action that arises from or relates to Havensight Capital LLC and its brand 'St. Thomas F.C.' against Nike, Inc." *Id.* at 7–8.

### b. *Nike II*

On November 20, 2014, the day after *Nike I* was dismissed with prejudice, Havensight, again through Woodhouse, filed a second lawsuit against Nike ("*Nike II*"). *See Havensight Cap. LLC v. Nike, Inc. (Nike II)*, No. 14 Civ. 8985 (MLR), Dkt. 1. It alleged that Nike's minimum-

purchase requirements for soccer-related merchandise interfered with Havensight's business. *Id.*

Havensight brought four claims, identical to those in *Nike I*: (1) intentional interference with

contractual relations; (2) intentional interference with prospective economic relations; (3)

negligence; (4) unfair competition and trade practices. Six days later, Havensight amended its

complaint to add two claims: of (1) vertical and horizontal price fixing; and (2) civil violations of

the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.*, Dkt. 7. Attached to the

Amended Complaint was the purported affidavit of an interview of a sporting goods retailer,

Francisco Mera, which stated that Nike had used its market strength to force purchases of its

goods, thereby excluding competitors like Havensight. *Nike II*, No. 14 Civ. 8985 (MLR), 2015

WL 993344, at *1 (C.D. Cal. Feb. 18, 2015). *Nike II* was reassigned to Judge Real.

After Nike moved to dismiss, Havensight filed multiple motions for default judgment.

*See Nike II*, No. 14 Civ. 8985 (MLR), Dkts. 43, 45, 47, 50, 72. Before the district court could

rule on these, Havensight filed a writ of execution, falsely claiming a judgment of $678,500,000

had been entered against Nike. *Id.*, Dkt. 52, 53. The court struck the writ of execution. *Id.*, Dkt.

76.

Nike then sought relief for Woodhouse's ethical violations. *Id.*, Dkt. 60. The district

court granted such relief, prohibiting Woodhouse from: (1) contacting Nike directly with respect

to pending legal matters in which it was represented by outside counsel; (2) making threats to

obtain an advantage in pending civil disputes; and (3) making false or deceptive statements to the

court. *Id.* After this order issued, Havensight filed nine additional motions, applications, and

requests for default judgment. *Id.*, Dkt. 74.

On February 18, 2015, the district court dismissed Havensight's Amended Complaint

with prejudice. *Nike II*, 2015 WL 993334, at *4–5. That same day, the court also sanctioned

4

Woodhouse under Federal Rule of Civil Procedure 11 for filing a false affidavit of an interview of purported retailer Mera. *Nike II,* No. 14 Civ. 8985 (MLR), 2015 WL 993344, at *2–3 (C.D. Cal. Feb. 18, 2015). In fact, Francisco Mora[3] averred in a sworn declaration, Woodhouse's statements in the affidavit were false: Mora is not the owner of Soccer Action USA, but rather a store manager; Mora does not know Soccer Action USA's purchase requirement terms with Nike; and Mora had not discussed any purchase requirement terms with Woodhouse. *Id.* On this basis, the court found that Woodhouse had presented the false affidavit to deceive it, in breach of Rule 11(b)(1) and (3). *Id.* at *2. It directed Woodhouse to pay Nike $82,729.01 in attorneys' fees and costs. *Nike II,* No. 14 Civ. 8985 (MLR), 2015 WL 13899007 (C.D. Cal. Sept. 22, 2014), *aff'd in part, dismissed in part,* 891 F.3d 1167 (9th Cir. 2018) (sanctions affirmed).

On February 19, 2015, *i.e.,* the following day, Woodhouse filed a motion to vacate judgment and reopen the case. *See Nike II,* No. 14 Civ. 8985 (MLR), 2015 WL 3549642, at *1 (C.D. Cal. Apr. 22, 2015). The district court denied the motion because "Plaintiff has not identified grounds for relief under either Rule 59(e) or 60(b)." *Id.* On April 22, 2015, the court cross-filed in *Nike II* the order in *Nike I* declaring Havensight a vexatious litigant. *Nike II,* No. 14 Civ. 8958 (MLR), 2015 WL 3544111 (C.D. Cal. Apr. 22, 2015). It noted that Havensight "shows no signs of ceasing its harassment of Nike" despite the fact that both *Nike* actions had been dismissed with prejudice and that Woodhouse had been sanctioned under Rule 11. *Id.* at *5. The court directed Havensight to seek leave from that court "prior to filing any action that arises from or relates to Havensight Capital LLC and its brand 'St. Thomas F.C.' against Nike, Inc." *Id.* at *6.

---

[3] Francisco Mora's last name is spelled differently in Woodhouse's affidavit.

While Woodhouse's *Nike I* and *Nike II* actions were pending before Judge Real, Woodhouse filed four motions to have his case reassigned to a different judge under 28 U.S.C. § 455. *See Havensight Cap., LLC v. Nike, Inc.*, No. 14 Civ. 7153 (ODW), 2015 WL 993036, at *1 (C.D. Cal. Feb. 24, 2015). One was assigned to Judge Otis D. Wright II, who denied it, explaining that "[i]n none of the motions, including this one, is there any mention of how or in what respect Judge Real is biased." *Id.* Judge Wright noted that Woodhouse and Havensight are not "the least bit troubled by wasting the scarce resources of this court by the filing of serial frivolous motions." *Id.*

On October 15, 2015, Havensight appealed the decisions dismissing the amended complaint, imposing Rule 11 sanctions, denying his application for default, and declaring Havensight a vexatious litigant. *Nike*, 891 F.3d at 1169. On June 7, 2018, The Ninth Circuit dismissed in part the appeal and affirmed the order imposing Rule 11 sanctions. *Id.* at 1174.

### 2. The People's Republic of China Action

On February 19, 2015, the day after the dismissal of *Nike II*, Havensight, again through Woodhouse, sued the People's Republic of China in the Central District of California. *Havensight Cap. LLC v. People's Republic of China*, No. 15 Civ. 1206 (DDP), Dkt. 1. It alleged that China had wiretapped its phones and that "Nike was specifically paid money by the Chinese government to harass, and even possibly torture the Plaintiff's manager." *See id.* at 6. Havensight again brought claims of: (1) intentional interference with prospective economic relations; (2) unfair competition and trade practices under California's Unfair Competition Law ("UCL"); (3) intentional interference with contractual relations; (4) negligence; (5) vertical and horizontal price fixing; and (6) civil RICO violations. It sought $450 million in compensatory and $100 million in punitive damages. *Id.* at 19–20. Judge Dean D. Pregerson dismissed the

action for improper venue and lack of subject matter jurisdiction. *People's Republic of China*, No. 15 Civ. 1206 (DDP), 2015 WL 12778414, at *3 (C.D. Cal. Apr. 30, 2015). Havensight filed five post-dismissal requests to reopen the case and enter default judgment. Judge Pregerson denied all.

### 3. Facebook Actions

#### a. Facebook I

On May 19, 2015, Havensight, through Woodhouse, brought an action in the Central District of California against Facebook, Inc. ("Facebook"), Meta's predecessor. Its claims were for: (1) intentional interference with prospective economic relations; (2) unfair competition and trade practices in violation of California's UCL; (3) intentional interference with contractual relations; (4) negligence; and (5) vertical and horizontal price fixing. *See Havensight Cap., LLC v. Facebook, Inc. (Facebook I)*, No. 15 Civ. 3758 (FMO), 2015 WL 3948380, at *1 (C.D. Cal. June 29, 2015). It alleged that Havensight had purchased ads on Facebook to attract users to its website on several occasions between November 11, 2013 and May 24, 2015. *Havensight Cap., LLC v. Facebook, Inc. (Facebook III)*, No. 17 Civ. 6727 (FMO), 2018 WL 6340757, at *3. It alleged that, based on a comparison between clicks tracked by the Facebook Ads Manager and by Google Analytics, respectively, the clicks registered by Facebook were inflated, resulting in Havensight's being overcharged. *Facebook I*, 2015 WL 3948380, at *1. Havensight sought $278 million in compensatory and $200 million in punitive damages. *Id.*

Havensight asserted that the district court had diversity jurisdiction under 28 U.S.C. § 1332. *Id.* However, because Havensight was a limited liability company whose citizenship derives from that of its partners, members, or owners, the court (Hon. Fernando M. Olguin) directed it to state the citizenship of each of its partners, members, or owners. *Id.* *1–3.

Havensight did not do so. *Id.* at *1–3. As a result, the court dismissed the case for failure to adequately plead diversity jurisdiction. *Id.* at *4–7.

The next day, on June 30, 2015, Havensight filed a motion to (1) reopen the case under Federal Rule of Civil Procedure 60(b); (2) reassign the case; and (3) obtain default judgment against Facebook. *Facebook I*, No. 15 Civ. 3758 (FMO), 2015 WL 12766168, at *2 (C.D. Cal. July 21, 2015). On July 1, 2015, Judge Olguin referred the reassignment motion to a different district judge, who denied the motion on July 9, 2015. *Id.* at *2. Judge Olguin then resumed responsibility over the case and denied the outstanding motion for reconsideration and default. *Id.* at *6. In so ruling, Judge Olguin notified Havensight that the "[t]he court will not consider any further filings . . . in this action unless they relate to plaintiff's ability to appeal the court's decision." *Id.* at 6.

### b.  *Facebook II*

Woodhouse then filed suit on behalf of Havensight against Facebook in California state court, repeating the same allegations of click inflation. *See Facebook III*, 2018 WL 6340757, at *3–4 (describing state court litigation). On June 15, 2016, the court sustained the demurrer on the operative complaint, finding it not to state a claim, and denied leave to amend. *Id.* at *3. On July 1, 2016, the state court denied Havensight's motion for a new trial and dismissed the action with prejudice. *Id.* Havensight appealed. The California Court of Appeal (first district) affirmed. *Id.* at *4. Havensight, it noted, had "failed to provide any comprehensible argument challenging the merits of the trial court's ruling on the demurrer [and] failed to assert facts that could be alleged in an amended complaint to cure the defects noted by the trial court." *Havensight Cap. LLC v. Facebook, Inc.*, No. A149366, 2017 WL 1507491, at *1 (Cal. Ct. App.

Apr. 27, 2017).  Havensight appealed to the California Supreme Court, which denied its petition for review.

### c.  Facebook III

On September 13, 2017, Woodhouse brought a third action on behalf of Havensight against Facebook, in the Central District of California. *See Facebook III,* 2018 WL 6340757, at *1.  Havensight repeated its claims from its first lawsuit against Facebook: (1) intentional interference with prospective economic relations; (2) unfair competition and trade practices under California's UCL; (3) intentional interference with contractual relations; (4) negligence; and (5) vertical and horizontal price fixing. *Id.* It added a new claim—for civil racketeering. *Id.* Havensight sought $490.61 million in compensatory and $480.28 million in punitive damages. *Id.* After documenting Havensight's history of frivolous litigation, the court dismissed the complaint with prejudice, sanctioned Woodhouse under Rule 11, and declared Havensight a vexatious litigant. *Id.* at *2–9, *20.  The court also directed Havensight to obtain leave of that court before filing any future lawsuits there against Facebook "based on any allegation related to online advertisements, unfair business practices, anticompetitive conduct, fraud, tortious conduct, negligence, or racketeering; and [to] deposit $5,000 as security with [that court] to secure the payment of any costs, sanctions, or other amounts which may be awarded against [Havensight] or its counsel." *Id.* at 20.  The Ninth Circuit affirmed the dismissal. *See Havensight Cap. LLC v. Facebook, Inc.*, 776 F. App'x 420, 421 (9th Cir. 2019).

### 4.  Google Action

On July 15, 2015, Havensight, represented by Woodhouse, filed suit against Google, Inc.—Alphabet's predecessor—in the Central District of California (Hon. Philip S. Gutierrez). *See Havensight Cap. LLC v. Google, Inc.*, No. 15 Civ. 5297 (PSG), Dkt. 1; *see also Facebook*

*III*, 2018 WL 6340757, at *9 (discussing suit against Google). Based on a comparison of the

clicks registered by Facebook Ads Manager with the clicks tracked by Google Analytics,

Havensight alleged that Google had fraudulently underreported customer visits to Havensight's

website. *Facebook III*, 2018 WL 6340757, at *9. Havensight's claims mirrored those it had

brought against Facebook: for (1) intentional interference with prospective economic relations;

(2) unfair competition and trade practices in violation of the UCL; (3) intentional interference

with contractual relations; (4) negligence; and (5) vertical and horizontal price fixing. *Google*,

No. 15 Civ. 5297 (PSG), Dkt. 1 at 14–32. It sought $340 million in compensatory and $250

million in punitive damages. *Id.* at 38–39.

On October 13, 2015, the district court *sua sponte* dismissed the action without prejudice

for lack of subject matter jurisdiction. *Google*, No. 15 Civ. 5297, Dkt. 31. Havensight sought

relief from the dismissal and requested default judgment. The court denied both. *Id.*, Dkts. 32,

35.

### 5. Actions Also Naming Corporate and Government Defendants

#### a. Government I

On August 21, 2021, Woodhouse brought suit in his own name against Facebook, Nike,

the law firm of Gibson Dunn (outside counsel to Nike and Facebook), Alphabet, the United

States Government, the Chief Justice of the United States, and several judges of the Central

District of California and the Ninth Circuit. *Government I*, 2021 WL 6333468, at *1. His tort

claims included ones for intentional infliction of emotional distress, negligence, fraud on the

court, and intentional interference with economical prospective advantage. *Id.* Woodhouse's

complaint also contained what the district judge—the Hon. Stanley Blumenfeld—termed "a

stream of nonsensical and imagined allegations—including accusations of government torture and assassination attempts." *Id.*

Judge Blumenfeld dismissed Woodhouse's complaint with prejudice. He noted that "[m]uch of the facts alleged arise out of the same issues and claims that have been before multiple judges in this district over the past six years." *Id.* at *2. He also noted that although "Judges Real and Olguin imposed pre-filing conditions as part of their vexatious litigant orders," Woodhouse had "file[d] a lawsuit in his own name without complying with any of the pre-filing conditions imposed on his company, Havensight." *Id.* Judge Blumenfeld declared Woodhouse "to be a vexatious litigant who is precluded—*either directly or indirectly through an entity he owns or controls*—from filing in the U.S. District Court for the Central District of California[] any action for claims described below against Nike, Inc., Facebook, Inc., and Gibson Dunn & Crutcher LLP . . . absent strict compliance" with that court's pre-filing conditions.[4] *Id.* at *8. He also found Woodhouse in civil contempt for violating prior vexatious-litigant orders; ordered Woodhouse to pay attorneys' fees and costs; and referred Woodhouse to the California State Bar.[5] *Id.* at *8–9. On May 23, 2023, the Ninth Circuit affirmed Judge Blumenfeld's dismissal. *Woodhouse v. United States Gov't*, No. 22-55045, 2023 WL 360032 (9th Cir. May 23, 2023).

---

[4] Judge Blumenfeld ordered that the parties protected by that filing injunction "need not respond to any future lawsuit or filings by [Woodhouse] or any of his businesses unless and until [that court] decides whether the lawsuit falls within the scope of the vexatious litigant order and should be permitted to proceed." *Government I*, 2021 WL 6333468, at *8 (footnote omitted).

[5] On December 31, 2021, Judge Blumenfeld dismissed the action in its entirety and ordered Woodhouse to pay $157,952.57 in attorneys' fees and costs. *Government I*, 2021 WL 6333451 (C.D. Cal. Dec. 31, 2021).

### b.  Government II

On January 7, 2022, Woodhouse filed another suit in the Central District of California against several judges in that District, United States government officials, Gibson Dunn, Meta, Nike, and Alphabet.  *See Woodhouse v. United States Gov't (Government II)*, No. 22 Civ. 79 (RGK), 2022 WL 1203094, at *1 (C.D. Cal. Apr. 22, 2022).  Woodhouse sought "dissolution of the corporate defendants and an award of $3 trillion against each."  *Government II*, 2022 WL 2232521, at *1 (C.D. Cal. June 10, 2022).  The case was assigned to Judge R. Gary Klausner.

Nike, Meta, and Gibson Dunn filed a motion for relief pursuant to Judge Blumenfeld's November 2021 vexatious litigant order.  *Government II*, 2022 WL 1203094, at *1.  On April 22, 2022, Judge Klausner granted their motion.  He found that Woodhouse's claims "fall squarely within the ambit of Judge Blumenfeld's vexatious litigant order."  *Id.* at *2.  He explained that "Woodhouse filed this action without written authorization from a Central District of California judge and without posting $5,000 with the clerk of the court, in clear violation of Judge Blumenfeld's order."  *Id.*  He dismissed the claims against the covered defendants with prejudice.  *Id.*  He also ordered Woodhouse to show cause why the claims against the remaining defendants should not be dismissed on the bases of judicial and qualified immunity and why "the Court should not refer Woodhouse to the State Bar of California, the Standing Committee on Discipline, and impose monetary sanctions under 28 U.S.C. § 1927."  *Id.* at *3.  The Ninth Circuit dismissed Woodhouse's ensuing appeal from Judge Klausner's April 22, 2022 Order because it was not "final or appealable."  *Woodhouse v. U.S. Gov't*, No. 22-55463, 2022 WL 3139017 (9th Cir. May 25, 2022).

Woodhouse then filed (1) a motion for default; (2) a motion for Rule 11 sanctions; and (3) an *ex parte* application for reinstatement of the "[c]onflicted [c]riminal [a]ctors."

*Government II*, No. 22 Civ. 79 (RGK), 2022 WL 2232521, at *2 (C.D. Cal. June 10, 2022).

Alphabet responded with motions to dismiss and for an order declaring Woodhouse a vexatious

litigant.  *Id.*  The district court denied Woodhouse's motions and *ex parte* application; dismissed

all claims against the Government and judicial officials; granted Alphabet's motion to dismiss;

sanctioned Woodhouse; and referred him to the State Bar of California and the Central District's

Standing Committee on Discipline.  *Id.* at *2, 7–8.

The district court also issued a vexatious-litigant order.  It declared "Benjamin

Woodhouse, Havensight Capital, LLC, and any other entity owned or controlled by Benjamin

Woodhouse, to be vexatious litigants."  *Id.* at 7.  Its order expanded the scope of the earlier such

orders to include Alphabet and Google as protected defendants.  Therefore, the court ordered,

Nike, Meta, Gibson Dunn, Alphabet, and Google "need not respond to any further lawsuit or

filings by the vexatious litigants until this Court decides whether the lawsuit falls within the

scope of this vexatious litigant order and should be permitted to proceed."  *Id.* at 8.

The Ninth Circuit affirmed.  *Woodhouse v. United States Gov't*, No. 22-55598, 2023 WL

3600024 (9th Cir. May 23, 2023).

### c.  *Government III*

On January 13, 2022, days after bringing *Government II*, Woodhouse brought another

action in his own name in the Central District of California, before Judge Christina A. Snyder.

*See Woodhouse v. United States Gov't* (*Government III*), No. 22 Civ. 285 (CAS).  Woodhouse

sued the United States Government, several United States government officials, and several

district judges serving in the Central District of California.  Judge Snyder referred Woodhouse's

complaint to Judge Blumenfeld "for the limited purpose of determining whether it falls within

the constraints of Judge Blumenfeld's November 24, 2021 vexatious litigant order."  *Woodhouse*

*v. United States Gov't*, No. 21 Civ. 6372 (SB), 2022 WL 2036319, at \*1 (C.D. Cal. Feb. 18, 2022).  On February 18, 2022, Judge Blumenfeld found that the claims against Nike, Meta, and Gibson Dunn "fall within the scope of this Court's [November 23, 2021] vexatious litigant order."  *Id.* at \*2.

Judge Snyder then resumed supervision of the case and struck Woodhouse's claims against Nike, Meta, and Gibson Dunn.  *Government III*, No. 22 Civ. 285 (CAS), 2022 WL 1405659, at \*2 (C.D. Cal. May 2, 2022).  Judge Snyder also dismissed the claims against the individual defendants, including judges and other government officials, on the basis of judicial or qualified immunity, respectively.  *Id.*

That left Woodhouse's claims against Alphabet.  These were for: (1) obstruction and due process violations; (2) fraud, collusion, and civil RICO violations; and (3) intentional interference with prospective business and economic relations.  *Id.* at \*4–6.  Judge Snyder dismissed these for failure to state a claim under Rule 12(b)(6).  *Government III*, No. 22 Civ. 285 (CAS), 2022 WL 2239157, at \*7 (C.D. Cal. June 22, 2022).  The Ninth Circuit affirmed. *Woodhouse v. United States Gov't*, No. 22-55636, 2023 WL 3600025 (9th Cir. May 23, 2023).

### d.  Government IV

On July 13, 2013, changing venues, Woodhouse filed suit, in his own name, against Meta, Alphabet, Nike, Gibson Dunn, several federal judges, and several government officials in the U.S. District Court for the District of Columbia before Judge Amit P. Mehta.[6]  *Woodhouse v.*

---

[6] The defendants were: Meta, Alphabet, Nike, Gibson Dunn, California Attorney General Rob Bonta, United States Attorney David Harris, United States Attorney Joanne Osinoff, Judge Mark Bennett, Judge Stanley Blumenfeld, Judge Gary Klausner, Judge Eric Miller, Judge Dean Pregerson, Judge Christina Snyder, Judge Lawrence Van Dyke, and Ninth Circuit Clerk of Court Molly Dwyer (each in his or her official capacity).

*Meta Platforms Inc. (Government IV)*, No. 23 Civ. 1924 (APM), 2023 WL 4531827, at *1 (D.D.C. July 13, 2023). Woodhouse's allegations included that: the defendants "operated a 'genocide hotel' in Pismo Beach, CA and held 'impromptu death trials' in which 'close to 3,000 people . . . have been murdered'"; a "full entourage of commandos attempted to breach [Woodhouse's] property and assassinate him from an uninhabited area adjacent to [Woodhouse's] property after helicopter insertion"; and defendants "imprison[ed] the Chinese Ambassador to the U.S. in order to stem shoe sales to China, and leverage their coercive behavior against [Woodhouse]." *Id.* (cleaned up). On July 13, 2023, the district court *sua sponte* dismissed the case as "rest[ing] on . . . fantastic and delusional claims." *Id.* The D.C. Circuit summarily affirmed. *Woodhouse v. Meta Platforms Inc.*, No. 23-5188, 2023 WL 7268255, at *1 (D.C. Cir. Oct. 30, 2023).

### B. This Action

On August 9, 2023, Woodhouse filed, *pro se*, the instant action in this Court. *See* Dkt. 1 ("Compl."). He sues the same defendants he sued in the District of Columbia. *Id.* at 1. And he brings the same claims that court termed fantastic and delusional. He alleges that the defendants engaged in "terrorist behavior," "war crimes," and "acts of genocide." *Id.* at 2. He claims that the defendants "held impromptu death trials" in a hotel in Pismo Beach, California, "routinely killing multiple victims in single evenings." *Id.* at 3. He claims that he is a victim "of over three hundred assassination attempts from contractors" hired by defendants. *Id.* at 4. He warns that if this Court "is unable to enforce the plead criminal conduct, . . . then the next step would be for anti terrorist teams to breach the Federal Court, take possession of the Judges, and close the Courts, until the U.S. Senate can better understand what procedures and intervention is required to ensure that we do not lose our Federal Court to terrorist actors ever again." *Id.* at 6.

15

As relief, Woodhouse seeks: (1) a protective order of unspecified scope; (2) a contempt order against the Government "to compel the videos of genocide" allegedly in its possession; (3) reinstatement of his electronic filing privileges; and (4) $471 million in compensatory and $409 million in punitive damages from each defendant. *Id.* at 56–65.

On September 8, 2023, this Court *sua sponte* dismissed the action as frivolous, denied Woodhouse's motion for leave to amend his complaint, and ordered Woodhouse to show cause "why the Court should not bar Woodhouse, Havensight, and any other entity that Woodhouse owns or controls from filing any future civil action in this court against any of the defendants named in this action without first obtaining the court's leave to file." *See* Dkt. 10 at 14–15.

On September 9, 2023, Woodhouse filed a response. Dkt. 18. He sought disqualification of this judge, entry of a default judgment in his favor, reinstatement of his complaint, and a new trial. *Id.* at 6. Like those in the Complaint, the factual allegations in Woodhouse's response were outlandish and marginally comprehensible. *See, e.g., id.* at 7 (alleging defendants paid "organized criminals to breach Woodhouse's property to assassinate Woodhouse," "commit[] infanticide within the genocide hotel," "murder six State police," and "generally participat[e] in a continuous schemata of felonious witness intimidation for more than 36 months").

On September 11, 2023, Nike, Meta, and Gibson Dunn moved for an order declaring Woodhouse a vexatious litigant and imposing a nationwide filing injunction. Dkt. 13. The proposed injunction would permanently enjoin Woodhouse, Havensight, and any other company Woodhouse owned or controlled from filing any civil action against Nike, Meta, or Gibson Dunn in *any* federal district court without, *inter alia*, first posting a $5,000 bond and obtaining permission of the Court. *See* Dkt. 16. Defendants filed a memorandum of law in support, Dkt.

14, and a proposed order, Dkt. 16.  On September 12, 2023, Woodhouse opposed the motion.[7]

Dkt. 23.  That same day, Alphabet moved to join the request in full.  Dkt. 21.  On October 3,

2023, Nike, Meta, and Gibson Dunn filed a reply to Woodhouse's opposition.  Dkt. 25.

## II.    Discussion

The Court first reviews the legal standards governing applications for filing injunctions;

next considers whether an injunction against Woodhouse and the companies he controls is

merited in this District along the lines of injunctions entered in the Central District of California;

and, finally, considers whether a filing injunction of nationwide scope is merited.

### A.    Applicable Legal Standards

There are two independent sources of legal authority for imposition of filing injunctions.

First is the All Writs Act.  It provides: "The Supreme Court and all courts established by

Act of Congress may issue all writs necessary or appropriate in aid of their respective

jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Second

Circuit precedents establish a district court's authority under the Act to enter a filing injunction

against a vexatious litigant.  *See, e.g.*, *In re Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir.

1982) (per curiam) ("The equity power of a court to give injunctive relief against vexatious

litigation is an ancient one which has been codified in the All Writs Statute, 28 U.S.C. §

1651(a).") (citing, *inter alia*, *Ward v. Penn. N.Y. Cent. Transp. Co.*, 456 F.2d 1046, 1048 (2d Cir.

1972); *Gordon v. U.S. Dep't of Just.*, 558 F.2d 618 (1st Cir. 1977); *Clinton v. United States*, 297

---

[7] The Court invited this response from Woodhouse, Dkt. 22, mindful of the "unequivocal rule in this circuit . . . that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."  *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (citations omitted).

F.2d 899, 901–02 (9th Cir. 1961); *Meredith v. John Deere Plow Co.*, 261 F.2d 121, 124 (8th Cir. 1958)).

Second is inherent judicial authority. As the Second Circuit has put the point: "Federal courts have both the inherent power and the *constitutional obligation* to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984) (emphasis added). "A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." *Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir. 1985) (citing *In re Martin-Trigona*, 737 F.2d at 1254).

Courts considering applications for filing injunctions have treated their statutory and inherent authority as coextensive. Because in issuing a filing injunction against a vexatious litigant, a district court acts "not only as an arbiter of a dispute between private parties but also in defense of the means necessary to carry out [its] constitutional function," the Second Circuit has held that "the traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of [such] an injunction." *In re Martin-Trigona*, 737 F.2d at 1262. Rather, district courts "may impose sanctions, including restrictions on future access to the judicial system" when a "litigant has a history of filing 'vexatious, harassing or duplicative lawsuits.'" *Sa v. Doe,* 406 F.3d 155, 158 (2d Cir. 2005) (quoting, *inter alia*, *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005); *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

In *Safir v. United States Lines*, the Second Circuit set out the factors to be considered in restricting a litigant's future access to courts: (1) the litigant's history of litigation and whether it entailed bringing vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive in

pursuing the litigation (*e.g.*, whether the litigant has an objective good-faith expectation of prevailing); (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. 792 F.2d at 24. "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.*

### B.  Discussion

Nike, Meta, Gibson Dunn, and Alphabet seek a nationwide filing injunction to prevent Woodhouse from continuing to harass them with frivolous lawsuits. The Court first addresses whether such an injunction against Woodhouse in this District is warranted under the *Safir* factors, as has been found warranted in the Central District of California. Finding that it is, the Court then considers whether a geographically broader nationwide injunction is necessary lest Woodhouse, by bringing lawsuits in yet new venues, "continu[e] to abuse the judicial process and harass [these] parties." *Id.*

#### 1.  Basis for a Filing Injunction

Woodhouse's documented history of filing harassing and duplicative lawsuits, including against the moving defendants, supplies the necessary factual predicate for a filing injunction identifying him as a vexatious litigant and restricting his future access to court. *See, e.g.*, *Shafii v. Brit. Airways*, 83 F.3d 566, 571 (2d Cir. 1996) ("The filing of repetitive and frivolous suits constitutes the type of abuse for which an injunction forbidding further litigation may be an appropriate sanction." (citations omitted)); *Grogan v. United States*, No. 13 Civ. 597 (GLS), 2014 WL 1028828, at *4 (N.D.N.Y. Mar. 17, 2014) ("Where a litigant persists in the filing of

vexatious and frivolous suits, it may be appropriate to place certain limitations on the litigant's future access to the courts." (citations omitted)); *Sa*, 406 F.3d at 158 ("If a litigant has a history of filing 'vexatious, harassing or duplicative lawsuits,' courts may impose sanctions, including restrictions on future access to the judicial system." (quoting *Iwachiw*, 396 F.3d at 528)). The Court therefore turns to the *Safir* factors to assess whether such a step is warranted.

The first *Safir* factor inquires whether a litigant has engaged in vexatious, harassing, or duplicative lawsuits. The answer here is, emphatically, yes. Since 2014, Woodhouse has initiated 12 lawsuits[8] suing a total of 18 defendants[9] across three federal districts.[10] Woodhouse

---

[8] These are: two actions against Nike; one action against the People's Republic of China; three actions against Facebook; one action against Google; and five actions, including this one, against a combination of private companies (Nike, Facebook/Meta, Alphabet, Gibson Dunn) and government officials.

[9] These are: Facebook, Google, Meta, Alphabet, Nike, Gibson Dunn, the People's Republic of China, Attorney General Rob Bonta, U.S. Attorney David Harris, U.S. Attorney Joanne Osinoff, Judge Stanley Blumenfeld, Judge Gary Klausner, Judge Christina Snyder, Judge Dean Pregerson, Judge Lawrence Van Dyke, Judge Eric Miller, Judge Mark Bennett, Ninth Circuit Clerk Molly Dwyer (each in their official capacity).

[10] These are: the Central District of California; the District of Columbia; and the Southern District of New York.

has litigated before nine district judges[11] and seven appellate panels.[12]  He has been sanctioned

five times[13] and has been the subject of four vexatious litigant orders.[14]

There is not "a strict numerosity requirement that must be met before a district court may

exercise its discretion to enjoin a litigant from filing future actions." *Eliahu v. Jewish Agency for*

*Israel*, 919 F.3d 709, 714 (2d Cir. 2019).  If there were, Woodhouse would have cleared that bar

with room to spare.  His proliferation of frivolous and noisome lawsuits establishes that he is a

vexatious litigant who, if unchecked, will continue to abuse the judicial process through similar

maneuvers.

Other features reinforce the vexatious and duplicative quality of Woodhouse's litigation

tactics.  The legal claims and factual allegations that he has pursued against the defendants (and

others) have been strikingly repetitive.  He has repeated specious claims notwithstanding the

---

[11] These are: Judges Blumenfeld, Engelmayer, Gutierrez, Klausner, Mehta, Olguin, Real, Snyder, and Wright.

[12] These are: *Nike, Inc.*, 891 F.3d at 1169; *Facebook, Inc.*, 776 F. App'x at 420; *United States Gov't*, 2022 WL 3139017, at *1; *United States Gov't*, 2023 WL 3600024 at *1; *United States Gov't*, 2023 WL 3600032, at *1; *United States Gov't*, 2023 WL 3600025, at *1; *Meta Platforms Inc.*, 2023 WL 7268255, at *1.

[13] Woodhouse or Havensight have been sanctioned in:  *Nike I*, No. 14 Civ. 7153, Dkt. 110 at 6 (Woodhouse sanctioned for $1,000 for repeatedly filing motions previously ruled upon)*; Nike II*, 2015 WL 993344, at *3 (Woodhouse ordered to pay Nike for full attorneys' fees and other expenses incurred as a result of Rule 11 violation); *Facebook III*, 2018 WL 6340757, at *20 (Havensight sanctioned under Rule 11); *Government I*, 2021 WL 6333468, at *9 (Woodhouse sanctioned for violating vexatious litigant orders in the amount of reasonable attorney's fees and costs incurred in defending the motion); *Government II*, 2022 WL 2232521, at *8 (Woodhouse sanctioned in the amount of reasonable attorneys' fees and costs that defendants expended in the action).

[14] *Nike*, 891 F.3d at 1174 (affirming order declaring Havensight a vexatious litigant); *Facebook III*, 2018 WL 6340757, at *20 (declaring Havensight a vexatious litigant); *Government I*, 2021 WL 6333468, at *8 (declaring Woodhouse, appearing as himself or for Havensight, a vexatious litigant); *Government II*, 2022 WL 2232521, at *7 (granting Alphabet's motion and declaring Woodhouse a vexatious litigant).

forceful dismissals of the preceding claims.  His submission of a fabricated affidavit, which

formed a basis of his *Nike II* Complaint, was also quintessentially vexatious.  And the fanciful

and bizarre nature of Woodhouse's factual allegations has, if anything, escalated over time, with

his more recent complaints alleging that he has witnessed government officials commit genocide,

murder, terrorism, and hate crimes, among other wrongs.  These allegations exemplify the

"fantastic [and] delusional" factual claims that, when brought by an *in forma pauperis* litigant,

would merit *sua sponte* dismissal as frivolous pursuant to 28 U.S.C. § 1915(d).  *See Nietzke v.*

*Williams*, 490 U.S. 319, 328 (1989).

The second *Safir* factor examines the litigant's motive in pursuing the litigation—in

particular, whether the litigant has an objective good faith expectation of prevailing.  Although

the specific animus or condition prompting Woodhouse to loose the above barrage of repetitive

lawsuits culminating in this one is unknown, the assembled circumstances belie an objective

good faith expectation of prevailing.  Over the past nine years, every case that Woodhouse has

initiated—whether on his behalf or Havensight's—has been dismissed.  None has cleared the

motion to dismiss stage; numerous claims have been summarily rejected as patently frivolous;

Woodhouse has been repeatedly sanctioned; and his wild factual and legal claims have been

facially incapable of prevailing.  Such is the case, too, here, where Woodhouse alleges the

variegated corporate and governmental defendants together "held impromptu death trials" in a

hotel in Pismo Beach, California, "routinely killing multiple victims in single evenings," Compl.

at 3, and hired contractors who subjected him to "over three hundred assassination attempts," *id.*

at 4.

The third *Safir* factor inquires whether the litigant is represented by counsel.  It is

axiomatic that a *pro se* litigant is "entitled to special solicitude." *Eliahu*, 919 F.3d at 715.  But a

court must not "excuse[] frivolous or vexatious filings" by such a litigant. *Id.* (quoting

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam)).  And "the

degree of solicitude may be lessened where the particular *pro se* litigant is experienced in

litigation and familiar with the procedural setting presented.  The ultimate extension of this

reasoning is that a lawyer representing himself ordinarily receives no such solicitude at all."

*Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (citations omitted).  Such is the case here.

Woodhouse is an attorney and member of the bars of both the State of California and of the

United States District Court for the Central District of California.  As a lawyer representing

himself in this case, he is not entitled to the solicitude extended to *pro se* litigants.  The third

factor, too, supports a filing injunction.

The fourth *Safir* factor inquires whether the litigant has caused needless expense to

parties or has posed an unnecessary burden on the courts and their personnel.  This factor applies

here with force.  Woodhouse's history of spurious lawyering has spanned almost a decade.  He

has forced defendants to incur needless expenses defending against duplicative baseless suits

brought in three federal district courts and in one state trial court and on appeal.  Woodhouse's

stunts have also burdened the courts tasked with adjudicating his claims.  The record does not

establish the pricetag in counsel fees and costs, or the time consumed by lawyers and judges

addressing these abusive matters, but a fair estimate would be substantial.  Woodhouse's

frivolous accusations of misconduct on the part of courts and counsel—no matter how facially

baseless—stand to tax and burden, too, the committed public and private servants whom he has

targeted.  A final cost is borne, at least potentially, by parties to other pending cases.  The

public's legitimate claims on the finite time, attention, and resources of federal and state courts

are undermined when such courts are diverted to dousing vexatious lawsuits.  *See In re Martin-*

*Trigona*, 737 F.2d at 1261 (noting capacity of a repeatedly frivolous litigant to "injure[] all litigants with cases pending in the district court . . . by diverting considerable judicial resources to his voluminous litigation").

The fifth and final *Safir* factor inquires whether sanctions short of a filing injunction would be adequate to protect the courts and parties. Here, they demonstrably would not. As recounted above, courts have repeatedly sanctioned and fined Woodhouse and referred him to the California State Bar. These measures did not deter Woodhouse from bringing new baseless lawsuits against the defendants and others, including in the districts that had sanctioned him. This record leaves the Court without confidence that monetary sanctions and/or disciplinary measures alone would deter Woodhouse from filing anew in this District.

All five *Safir* factors thus emphatically support the issuance of an injunction barring Woodhouse from filing anew in this District. As courts have recognized in such circumstances, "the normal opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints." *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994). The Second Circuit has cited with approval injunctions that prohibited the filing of any matters in a designated category; that prohibited the filing of an action against designated parties in demonstrated need of protection; that required leave of court for future filings; and that required the vexatious litigant to post a bond prior to any future filing. *See id.* Woodhouse's conduct here merits an injunction with these features.

The injunction the Court will today impose requires that Woodhouse abide by certain pre-filing conditions before initiating suit against Nike, Meta, Gibson Dunn, or Alphabet, or their affiliates. Specifically, before initiating suit against these defendants in this District, Woodhouse must seek leave of this Court to so file; must post a $5,000 bond; and must file an affidavit with

24

the Court explaining how his proposed claims against the protected defendant(s) are distinct

from those raised in earlier dismissed lawsuits and why they are non-frivolous.  Only upon a

Court order reflecting that Woodhouse has met these conditions may Woodhouse initiate suit

against any of these defendants.  And only upon an authorized filing will the defendant(s) be

obligated to respond.  Should the Court determine that Woodhouse has filed a lawsuit without

meeting these conditions, the Court can be expected, *inter alia*, to dismiss the case *sua sponte* as

filed in violation of this Court's filing injunction.  *See, e.g., Malhotra v. Emirates Airlines*, No.

18 Civ. 3718 (BMC), 2018 WL 4922915, at *1 (E.D.N.Y. Oct. 10, 2018) (requiring plaintiff to

post a $2,500 bond to deter him "from further fraudulent lawsuits" asserting "phony lost luggage

claims after trips he has taken on international airlines"); *Brady v. Goldman*, No. 16 Civ. 2287

(GBD), 2017 WL 496083, at *2 (S.D.N.Y. Feb. 3, 2017), *aff'd*, 714 F. App'x 63 (2d Cir. 2018)

(entering filing injunction requiring plaintiff to seek court permission before filing related suits

in this District because plaintiff engaged in "repetitive and vexatious litigation" by filing more

than a half-dozen lawsuits related to the air rights appurtenant to his cooperative penthouse unit);

*Colida v. Nokia Inc.,* No. 07 Civ. 8056 (KMW) (HBP), 2008 WL 4449419 (S.D.N.Y. Sept. 29,

2008), *aff'd*, 347 F. App'x 568 (Fed. Cir. 2009) (entering filing injunction requiring plaintiff to

obtain leave of court, attach a copy of the filing injunction order, and attach an attestation that he

has complied with Rule 11 and with the conditions of the filing injunction before filing a new

action against any defendant in this District).

### 2.  Geographic Scope of the Filing Injunction

A distinct issue is presented by defendants' application that the filing injunction be

nationwide.  Where a party's vexatious filings have been limited to a single jurisdiction, there is,

without more, ordinarily no cause to impose a filing injunction reaching beyond that jurisdiction.

*See, e.g.*, *Brady v. IGS Realty Co. L.P.*, No. 19 Civ. 10142 (PAE), 2020 WL 6049649, at *4 (S.D.N.Y. Oct. 13, 2020) (entering district-specific filing injunction against plaintiff who had "filed scores of meritless actions" in this District seeking to collaterally attack adverse state court decisions); *Magee v. Walt Disney Co.*, No. 19 Civ. 10274 (AJN), 2020 WL 6047428, at *4 (S.D.N.Y. Oct. 13, 2020) (entering filing injunction in this District after finding that plaintiff had filed "three separate suits presenting nearly identical claims," "the same motion for sanctions twice," and "the same motion for default judgment three times" in this District); *Abdullah*, 773 F.2d at 487 (affirming with slight modification district-specific filing injunction against plaintiff who had "filed a number of civil actions in [the Eastern District of New York] concerning the propriety of his arrest, conviction and subsequent imprisonment," and whose "litigation increased in quantity but not in quality" over time); *Buhannic v. TradingScreen Inc.*, No. 19 Civ. 10650 (ER), 2020 WL 4058949, at *2–5, *7 (S.D.N.Y. July 20, 2020) (issuing district-specific filing injunction because plaintiff had filed more than a half-dozen lawsuits in this District).

Where, however, a litigant has peppered multiple jurisdictions with vexatious filings—and where such have made substantially the same specious claims against common defendants—the case law supports imposition of a nationwide filing injunction, to reflect the practical reality that only such can effectively guard "against the threat of onerous, multiplicitous, and baseless litigation." *Abdullah*, 773 F.2d at 488 (citation omitted).  And courts in this Circuit, while mindful of the gravity of such an injunction, have entered nationwide filing injunctions similar to that sought here against comparably vexatious actors.

In *Ward v. Pennsylvania New York Central Transportation Co.*, two judges in this District—Judges Murray I. Gurfein and Edward C. McLean—each imposed a nationwide filing injunction enjoining the plaintiff from instituting any further actions against protected defendants

in any court in the United States related to matters set forth in his frivolous complaints; the Second Circuit upheld these injunctions on appeal. 456 F.2d 1046 (2d Cir. 1972). In entering the nationwide filing injunction, Judge Gurfein noted plaintiff's long history of vexatious litigation in federal court, which began in 1960 and spanned six federal actions. *Ward v. Penn. N.Y. Cent. Transp. Co.*, 328 F. Supp. 1245, 1246–47 (S.D.N.Y. 1971). Because the plaintiff had repeatedly asserted "fantastic" claims "based upon the same underlying 'wrong,'" Judge Gurfein had "no doubt" that a nationwide filing injunction was "proper relief against [the] vexatious litigation." *Id.*

In *Boruski v. Stewart*, Judge Milton Pollack enjoined the plaintiff from instituting any further actions against any protected defendant in any court in the United States based on any matters alleged in his complaint. 381 F. Supp. 529, 535 (S.D.N.Y. 1974). In the suit before Judge Pollack, the plaintiff had charged 37 Army Air Force Officers, federal personnel, federal judges, federal attorneys, and a federal Court Clerk with "a wide ranging conspiracy . . . to defeat and obstruct justice for [plaintiff]." *Id.* at 531. Judge Pollack observed that the issues raised in the present complaint had previously been resolved, but that the "plaintiff either fails to comprehend the meaning of the doctrine of res judicata or stubbornly refuses to abide" by it. *Id.* Accordingly, Judge Pollack found equitable intervention necessary to put a stop to the plaintiff's "pattern of repetitious and vexatious litigation." *Id.* at 535.

In *Malley v. New York City Board of Education*, Judge John F. Keenan similarly imposed a filing injunction spanning all federal courts based on the plaintiff's "history of abusing the process of this and other courts by repeatedly filing actions based on the same allegations." No. 94 Civ. 7186 (JFK), 1997 WL 570501, at *1 (S.D.N.Y. Sept. 15, 1997). Originally, Judge Keenan's injunction was only limited to this District. *Malley v. New York City Bd. of Educ.*, No.

27

94 CIV. 7186 (JFK), 1995 WL 434322, at *4 (S.D.N.Y. July 24, 1995), *aff'd in part, remanded in part*, 112 F.3d 69 (2d Cir. 1997).  But, after Judge Kennan had entered the district-specific injunction, plaintiff filed "two other actions of the same nature in the District of New Jersey" and "another repetitious action . . . in the Eastern District of New York." *Malley*, 112 F.3d at 69. Because of plaintiff's "persistence in pursuing the same meritless claims wherever his papers are accepted by a clerk of court," the Second Circuit remanded the case back to Judge Keenan with instructions "to broaden the injunction beyond the Southern District to all federal courts." *Malley*, 112 F.3d at 69.  Judge Keenan did so.

More recently, in *Hermes of Paris v. Swain*, the Second Circuit affirmed a nationwide filing injunction—entered by Chief Judge Colleen McMahon—that prevented the plaintiff from reinstating his complaint in state court and from filing any additional lawsuits against his employer for claims related to his employment in any court.  No. 20 Civ. 3451, 2021 WL 5170726 (2d Cir. Nov. 8, 2021).  The plaintiff continued to press claims in court instead of through mandatory arbitration despite orders to the contrary from the district court, "the Second Circuit[], the New Jersey Superior Court[] and the New Jersey Appellate Division[]." *Hermes of Paris, Inc. v. Swain,* No. 16 Civ. 6255 (CM). 2020 WL 5549704, at *5 (S.D.N.Y. Sept. 16, 2020).  Accordingly, the Circuit found the filing injunction justified because the plaintiff "has undoubtedly caused needless expense to [defendant] and imposed an unnecessary burden on federal and state courts through his repeated filings." *Hermes of Paris*, 2021 WL 5170726, at *3 (citing *Eliahu*, 919 F.3d at 715).

Finally, in *Kaul v. Intercontinental Exchange*, Judge J. Paul Oetken imposed a nationwide filing injunction against a plaintiff who had filed actions in this District and the Districts of Columbia, Connecticut, and Massachusetts, and the Northern Districts of both Texas

and Illinois.  No. 21 Civ. 6992 (JPO), 2022 WL 4133427, at *8 (S.D.N.Y. Sept. 12, 2022).

Judge Oetken described the case before him as "another chapter in a long saga of repetitive,

frivolous lawsuits . . . regarding revocation of [plaintiff's] license to practice medicine."  *Id.* at

*1.  The plaintiff there alleged, *inter alia*, that "a network of politically connected neurosurgeons

. . . importuned public officials to banish him from the practice of medicine in New Jersey."  *Id.*

Judge Oetken found that absent a nationwide filing injunction, plaintiff would continue "abusing

different district courts around the country."  *Id.* at *8 (quotation omitted).

      The Second Circuit has instructed that, before imposing a nationwide filing injunction, a

district court must find not only that the *Safir* factors favor a filing injunction, but also that

nationwide relief is "necessary and proper."  *In re Martin-Trigona*, 737 F.2d at 1262.  In such

cases, courts have typically found nationwide relief warranted where the facts demonstrate the

vexatious litigant's willingness to "mov[e] to a new forum" to pursue harassing and repeating

claims "each time such [a district-specific] injunction is issued."  *Sassower v. Abrams*, 833 F.

Supp. 253, 268, 270 (S.D.N.Y. 1993) ("The Second Circuit has recognized that, when a litigant

has shown a pattern of abusing different district courts around the country, an injunction which

applies to all federal district courts is warranted."); *see also Raffe v. Doe*, 619 F. Supp. 891, 898

(S.D.N.Y. 1985) (finding that "any measure short of a [nationwide] injunction will be ineffective

in preventing [plaintiffs] from using the federal courts as vehicles for harassment.").  And in *In*

*re Martin-Trigona*, the Second Circuit upheld such a nationwide injunction based on the

plaintiff's "established practice of resorting to litigation in various fora as a means of harassing

anyone who so much as crosses his path in the federal courts."  737 F.2d at 1263.  In *Safir*, the

Circuit similarly directed district courts to assess whether a plaintiff "has repeatedly asserted the

same claims in slightly altered guise" as an attempt to "harass the defendants." 792 F.2d at 24–25.

Measured against these standards, Woodhouse's history of litigation misconduct easily merits imposition of a nationwide filing injunction. District-specific injunctions have proven manifestly unequal to the task of curbing Woodhouse's impulse towards vexatious litigation. In particular, Woodhouse was the subject of orders based on his vexatious litigation history that barred him from suing designated parties in the Central District of California. But Woodhouse evaded the patent intent of these orders by suing the same parties in a different federal district— first the District of Columbia and now this District—and in state court. A nationwide injunction that protects these defendants from frivolous suits by Woodhouse in *all* federal district courts is thus warranted and necessary to "address[] the new judicial avenues being used by [Woodhouse] to perpetuate his vexatious litigation." *Sassower*, 833 F. Supp. at 270. This Court "need not wait until a vexatious litigant inundates each federal district court with meritless actions to condition access to that court." *In re Martin-Trigona*, 737 F.2d at 1262.[15]

In finding Woodhouse's litigation misdeeds satisfy the standard for a nationwide filing injunction, the Court notes that these misdeeds match or exceed those of the litigants who have been the subject of the nationwide filing injunctions previously imposed in this Circuit. Like the

---

[15] Woodhouse's filing in California state court would factually support the imposition of filing injunction running to all courts in the nation—state as well as federal. Considerations of comity and federalism have dissuaded this Court from so ordering, for now. *See Martin-Trigona*, 737 F.2d at 1263 (finding district court erred in extending nationwide filing injunction to state courts because "[a]buse of state judicial processes is not *per se* a threat to the jurisdiction of Article III courts and does not *per se* implicate other federal interests"); *but see Hermes of Paris*, 2021 WL 5170726, at *2 (affirming district court nationwide filing injunction that prevented litigant from reinstating complaint in New Jersey state court). Should Woodhouse direct his vexatious litigation to state courts, there may be cause for entry, by an appropriate court, of an injunction reaching state courts.

litigants in *Safir, Sassower*, and *Martin-Trigona*, Woodhouse has spent a near decade relitigating claims that "have been resoundingly rejected by [previous] courts" as meritless and which were brought solely to harass defendants. *Safir*, 792 F.2d at 24; *see also Sassower*, 833 F. Supp. at 256 ("Despite having litigated the merits of every aspect of the Puccini dissolution, Sassower has engaged in a campaign of attrition in the federal and state court system for over a decade, by instituting dozens of lawsuits and hundreds of motions in an effort to harass [defendants]."); *Martin-Trigona*, 737 F.2d at 1256 ("[Plaintiff] is the source of literally hundreds of lawsuits, motions and miscellaneous pleadings, all but a small fraction of which lack any merit whatsoever."). And the volume of cases in which Woodhouse has propagated the same baseless claims outstrips that in the precedents above.

In sum, because Woodhouse's serial lawsuits against these defendants are patently frivolous, because they are explicable only as attempts to harass the defendants, and because they are capable of being averted only by the strong medicine of a nationwide filing injunction, the Court will impose such an injunction. See *Safir*, 792 F.2d at 25 (imposing such an injunction as necessary to prevent further "harass[ment of] the defendants"); *Sassower*, 833 F. Supp. at 266 (same; and finding that plaintiff's actions "are unequivocally intended to harass the named defendants"). A nationwide filing injunction, the Court finds, is "necessary and proper" to protect the defendants, as well as the federal courts whom Woodhouse otherwise will saddle with such wasteful lawsuits. *In re Martin-Trigona*, 737 F.2d at 1262.

The order the Court will issue today alongside this decision imposes a nationwide filing injunction against Woodhouse and any company he owns or controls. It will impose, for any lawsuit in any federal court outside this District that Woodhouse seeks to bring against Nike, Gibson Dunn, Meta, and Alphabet, pre-filing conditions tracking those the Court is imposing in

this District, as set out above.  The sole distinction will be that, for cases which Woodhouse

seeks to file outside this District, the pre-filing conditions of obtaining leave of court may be

satisfied by obtaining leave either from this Court *or* from a court in the District in which

Woodhouse contemplates filing.  The order will require Woodhouse, before seeking such leave,

to furnish a copy of this decision, and today's order, to the Court from whom such leave is

sought.

## CONCLUSION

For the reasons set out above, the Court grants the moving defendants' motion for

imposition of a nationwide filing injunction as to plaintiff Woodhouse.  An order setting out the

terms of this injunction will issue today.  The Clerk of Court is respectfully requested to

terminate the motions pending at dockets 13 and 21 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: December 5, 2023
New York, New York